# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **NADIA B. MICHAEL,** | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 07 C 3490<br>) |
| **MICHAEL J. ASTRUE,** Commissioner of Social Security, | )<br>)<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nadia Michael brought this action against the Commissioner (the "Commissioner") of the Social Security Administration (the "SSA") appealing the decision to deny her disability insurance benefits ("DIB"). Both parties have filed cross motions for summary judgment. For the following reasons, plaintiff's and defendant's motions for summary judgment are denied. The case is remanded for further proceedings consistent with this opinion.

I.

On July 22, 2004, plaintiff applied for DIB for a disability beginning on August 1, 2001. The claim was denied initially on November 8, 2004, and upon reconsideration on February 18, 2005. Plaintiff filed a request for a hearing. On July 19, 2006, Administrative Law Judge Janice M. Bruning (the "ALJ") held a hearing, at which plaintiff, who was represented by counsel, and vocational expert ("VE") James Breen testified. The ALJ issued a

decision on August 16, 2006 finding that plaintiff was not disabled under the Social Security Act (the "Act"). Plaintiff requested that the Appeals Council review the ALJ's decision; on April 27, 2007, the Appeals Council denied this request. Plaintiff subsequently filed the instant action on June 21, 2007.

## A. The Hearing

Plaintiff's date of birth is April 29, 1957. She has a bachelor's degree in oceanography. (R. at 252.) Plaintiff previously worked as a water lab technician and a school bus driver. (R. at 254-55.) Plaintiff testified that she has not tried to work since she left her last job because of the pain she experiences. (R. at 254.)

On examination by the ALJ, plaintiff testified as follows. She still experiences pain in her lower and middle back, which she described as feeling like her back is breaking. (R. at 255.) Because she is very sensitive to pain medication, she does not take anything other than Tylenol unless she is in severe pain. (R. at 255.) Her doctors have not suggested surgery, and have told her there is nothing they can do for her. (R. at 259.) Her doctors recommended physical therapy, which she did, but it did not help. (R. at 259.) Plaintiff described her level of pain at the hearing as a 4 or 5 (on a scale of 1 to 10), which she characterized as an average day. (R. at 256.) She has at least 15 bad days per month, meaning that she would rate her pain at about a 9. (R. at 256.) In

2

addition, plaintiff takes medications for her mitral valve problem, including Coumadin, Lasix, and potassium. (R. at 257.) She can walk no more than a block because she gets extremely tired. (R. at 257.) Her doctor said she needs another valve replacement, but she is waiting and trying to avoid it as long as she can. (R. at 257-58.) Plaintiff can stand on her feet for not more than half an hour, or she will be in severe pain in her lower back; she can sit, without extending her hand or doing anything with her arm, for a long period; she can lift about ten pounds for a short period of time; she has difficulty climbing stairs, bending, stooping, crouching, and crawling; and, lately, she has been losing her balance. (R. at 258-59.) She can reach overhead with one arm, but has a hard time with the other arm. (R. at 260.)

On examination by her attorney, plaintiff testified that she gets short of breath if she dusts or does any little thing. (R. at 266.) Plaintiff further testified that she relies on her husband, Dr. Michael, a lot for medical treatment. (R. at 266-67.) Her husband and Dr. Iskander work in the same hospital, but not in the same office. (R. at 267.) The ALJ did not permit Dr. Michael to testify as plaintiff's treating physician because he is also her husband. (R. at 268.) But the ALJ noted that it was on the record that Dr. Michael would agree with Dr. Iskander's residual functional capacity ("RFC") assessment. (R. at 268.)

On examination by the ALJ, the VE testified that "an individual situated as the claimant in age, education, and work experience, who can lift 20 pounds occasionally, 10 pounds frequently; stand and/or walk about six hours during an eight-hour workday; sit about six hours during an eight-hour workday; who can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolding; occasionally balance, stoop, crouch, kneel, and crawl; and who needs a sit/stand option at will" could still perform her past relevant work of lab technician as long as the sit/stand option did not take her off task for longer than 10 minutes at a time. (R. at 270.) On examination by plaintiff's attorney, the VE testified that if a person cannot lift 10 pounds or sit two hours in an eight-hour workday, then that precludes competitive employment. (R. at 270-71.) The VE further testified that if a person were limited to occasionally reaching and handling, then that would preclude working as a lab technician. (R. at 271-72.) The VE also testified that some other unskilled light jobs, such as host or greeter, would be precluded by plaintiff being limited to occasionally reaching and handling. (R. at 272.) The VE further testified that the sit/stand option would preclude most occupations. (R. at 273.)

B. The Decision

The ALJ determined that the plaintiff had the RFC to: lift and/or carry 20 pounds occasionally; lift and/or carry 10 pounds

4

frequently, stand and/or walk about six hours in an eight hour workday; and sit about six hours in an eight hour workday. (R. at 17.) The ALJ further found that plaintiff needed the following: a sit/stand option at will that does not take her off task for more than 10 minutes; to never climb ladders, rope, or scaffolding; to occasionally climb ramps/stairs, balance, stoop, couch, kneel, and crawl; and to avoid concentrated exposure to lung irritants. (R. at 17.) In making this finding, the ALJ cited: plaintiff's hearing testimony; medical records of Dr. Robert P. Kazan; echo/Doppler studies from October 29, 2003 and June 26, 2004; a June 2004 chest x-ray; and a telephone report regarding a call in October 2004 to Dr. Mohamed Dahodwala's office. (R. at 17-19.) The ALJ gave no weight to: the opinion in exhibit 1F because the signature was unclear and it did not define "intermittent rest periods" or explain why they are needed; Dr. Ashraf A. Iskander's opinions in exhibit 6F, consisting of reports and records, because the ALJ found his objectivity questionable, "minimum exertion" was undefined, and the limitations in standing, sitting, and walking were unspecified; and Dr. Iskander's opinion "clearly set[ting] forth limitations" in exhibit 11F, the medical source statement, because it was prepared on behalf of plaintiff's attorney and Dr. Iskander's objectivity was compromised because, according to plaintiff, he is well-acquainted with her husband. (R. at 19.)

5

II.

The Act provides for limited judicial review of final decisions of the Commissioner. I will affirm the decision if it is supported by substantial evidence in the record. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). I will reverse the Commissioner's findings only if they are not supported by substantial evidence or if an erroneous legal standard was applied. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted) When an ALJ denies benefits, the ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Zurawski*, 245 F.3d at 887. In determining whether the findings are supported by substantial evidence, I review the entire administrative record, but I do not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [my] own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869.

III.

Social security regulations require that a claimant suffer from a disability within the meaning of the Act in order to receive DIB. 20 C.F.R. § 404.1505(a). To determine whether a claimant is disabled, a sequential five-step evaluation must be performed pursuant to 20 C.F.R. § 404.1520. The ALJ must evaluate, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether she has a severe impairment; (3) whether the claimant's impairment meets or equals one listed [in 20 C.F.R. § 404, Subpt. P, App. 1]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Id.* at 868 (citation omitted). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Id.* (citation omitted).

Here, the ALJ first found that plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. (R. at 16.) Second, the ALJ found that plaintiff had the following severe impairments: spinal stenosis with a history of laminectomy in 1990; and valvular heart disease. (R. at 16.) Third, the ALJ found that plaintiff did not have an impairment, or combination of impairments, that met or equaled one of the listed impairments in 20 CFR Part 404 for spinal and cardiovascular disorders. (R. at 16.) The ALJ also described plaintiff's RFC. Fourth, the ALJ found plaintiff had the RFC to perform the requirements of her past relevant work as a water lab technician. (R. at 19.) The ALJ concluded that plaintiff was not under a disability as defined under the Act from August 1, 2001 through the date of the decision.

Plaintiff challenges the denial of her claim for DIB asserting that: (1) the ALJ improperly made her own medical findings; (2) the ALJ made fatal factual errors; (3) the ALJ failed to consider plaintiff's credibility; and (4) the ALJ failed to consider entire

7

record, particularly the evidence favorable to plaintiff. Defendant counters that substantial evidence supports the ALJ's: (1) assessment of the treating physicians' opinions; (2) credibility assessment; and (3) Step Four finding.

A. Treating Physicians' Opinions

Plaintiff contends that the ALJ failed to give appropriate weight to the opinions of treating physicians, Drs. Dahodwala, Iskander, and Michael. "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870 (citing 20 C.F.R. § 404.1527(d)(2)). A claimant is not entitled to disability benefits based solely on a physician's finding that she is "disabled" or "unable to work." *Id.* Rather, "the Commissioner is charged with determining the ultimate issue of disability." *Id.* Nevertheless, the ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." *Id.* (quotation omitted). And the ALJ must not substitute his judgment for a physician's opinion without relying on other medical evidence or authority in the record. *Id.* (citation omitted).

With regard to Drs. Iskander and Michael, according to exhibit 11F, the medical source statement completed by Dr. Iskander, the assessment of plaintiff's RFC was that she was capable of

8

occasionally lifting and/or carrying less than 10 pounds; frequently lifting and/or carrying less than 10 pounds; standing and/or walking less than two hours in an eight-hour work day; needed to periodically alternate sitting and standing to relieve pain or discomfort; limited in pushing and/or pulling in the lower extremities; never climbing, balancing, kneeling, or crouching, and occasionally crawling; and limited in reaching and handling. (R. at 226-28.) The ALJ criticized this opinion because it was prepared on behalf of plaintiff's attorney, and gave it no weight because Dr. Iskander's objectivity was compromised because he was well-acquainted with plaintiff's husband.[1] (R. at 19.) The decision does not indicate that the ALJ rejected this opinion because it was unsupported by medical findings or inconsistent with other substantial evidence in the record.

The medical source statement is a form document. Even though it was transmitted by counsel to plaintiff's doctor, it was not created by counsel nor is there anything in the record suggesting that plaintiff's counsel somehow controlled the content of this

---

[1]The ALJ gave no weight to Dr. Iskander's opinions in his reports and records in exhibit 6F because (1) she found his objectivity questionable, (2) "minimum exertion" was undefined, and (3) the limitations in standing, sitting, and walking were unspecified. Plaintiff generally refers to the substance of Dr. Iskander's opinion set forth in exhibit 6F, but does not specifically challenge the ALJ's rejection of this opinion nor address the ALJ's reasons therefor. Rather, plaintiff focuses on the ALJ's rejection of Dr. Iskander's RFC assessment. Accordingly, I address only the ALJ's decision to give no weight to the RFC opinion.

9

form.  As such, I find the ALJ's conclusion that this opinion should be disregarded because it was prepared on behalf of plaintiff's counsel unsupported by the record.  Additionally, I find the record does not support the ALJ's conclusion that Dr. Iskander is not objective due to his relationship with plaintiff's husband.  The decision states that, according to plaintiff, Dr. Iskander is "well-acquainted" with her husband. (R. at 19.) Plaintiff's testimony, however, was that Dr. Iskander and her husband worked together in the same hospital, not in the same office. (R. at 267.)  There was no further inquiry regarding the extent of Dr. Iskander's association with plaintiff's husband.  Although plaintiff's summary judgment papers lend support to the idea that Dr. Iskander may have been more closely associated with plaintiff's husband by referring Dr. Iskander as Dr. Michael's "partner," the conclusion that the two were well acquainted is not borne out by the administrative record. (*See* Pl.'s Mem. at 2, 10.)

Thus, I find the ALJ erred in giving no weight to exhibit 11F because it was prepared on behalf of plaintiff's counsel or because Dr. Iskander was not objective.  I am not suggesting, however, that exhibit 11F is entitled to controlling weight; only that it should have been considered along with the other evidence in the record, and weighed according to the support (or lack thereof) by the medical findings and its consistency (or lack thereof) with other evidence.

10

With regard to the ALJ's refusal to allow Dr. Michael to testify because he is plaintiff's husband, I do not find the ALJ erred. The ALJ's conclusion that his testimony could not be accorded the weight of an outside, objective, treating physician is reasonable.

With regard to Dr. Dahodwala, the ALJ accorded exhibit 1F no weight because the signature was unclear and it did not define "intermittent rest periods."[2] As with Dr. Iskander's RFC opinion, the decision does not state that the ALJ rejected exhibit 1F opinion because it was unsupported by medical findings or inconsistent with other substantial evidence in the record.

Exhibit 1F consists of a cardiac report, a respiratory report, and medical records. First, the decision states that exhibit 1F was given no weight because the signature was unclear. In the list of exhibits, exhibit 1F is described as "Cardiac Report, dated 08/11/97 (unreadable signature) and Respiratory Report, completed by Dr. Mohamed Dahodwala, dated 08/24/04." Apparently, the signature in the respiratory report was not so unclear as to prevent it from being identified as Dr. Dahodwala's in the exhibit index. The ALJ, nevertheless, generally deemed the signature unclear, without specifying to which signature she referred. In

---

[2]Plaintiff attributes the failure to define "intermittent rest periods" to Dr. Iskander. I assume, however, that plaintiff meant Dr. Dahodwala because the decision refers to the opinion contained in Exhibit 1F, and plaintiff accurately cites to this portion of the opinion.

11

addition, the address and telephone number accompanying the signatures is the same on both the cardiac and respiratory reports. (R. at 128, 130.) Moreover, the SSA actually contacted Dr. Dahodwala's office on October 13, 2004 to request copies of office notes and any changes in therapy and response, but was told that plaintiff's most recent medical information already was submitted in August 2004. (R. at 210.) Overall, based on the record, I cannot conclude that the signatory's identity was not readily discernible.

Second, the decision states that exhibit 1F was given no weight due to the failure to define "intermittent rest periods" or to explain why they are needed. The cardiac report form poses the question "Have any restrictions been placed on your patient's ability to engage in physical activity?" and provides boxes to check "Yes" or "No." (R. at 126.) The question continues "If YES, please describe restriction (e.g., complete bed rest, intermittent rest periods, etc.):" and provides a single line for the description. (R. at 126.) "Intermittent rest periods" was typed on this line. This description tracks the form's suggested language. While the lack of information regarding intermittent rest periods could be weighed in determining whether the opinion is supported by medical findings or consistent with other evidence in the record, it is not an independent basis for disregarding the entire opinion.

12

Defendant asserts that Dr. Dahodwala's opinion was inconsistent with that of the State Agency reviewing physician, Dr. Kenney. This may be so, but the ALJ did not refer to any such inconsistency nor explain that she was rejecting Dr. Dahodwala's opinion in favor of Dr. Kenney's opinion. Even though the ALJ's RFC finding tracks Dr. Kenney's RFC assessment, the decision makes no mention whatsoever of Dr. Kenney's RFC assessment or other opinions. In fact, the decision plainly states that the ALJ accorded exhibit 1F no weight based solely on the illegible signature and the failure to define or explain intermittent rest periods. There is no indication that the ALJ considered and rejected exhibit 1F based on its content. As such, I am unable to conclude the ALJ made a determination regarding the substance of Dr. Dahodwala's opinions based upon Dr. Kenney's opinions.

Thus, I conclude the ALJ erred in giving no weight to exhibit 1F because the signature was illegible and intermittent rest periods was not defined or explained. Again, I am not suggesting that exhibit 1F is entitled to controlling weight; only that it should have been considered and weighed along with the other evidence in the record.

### B. Factual Errors

Plaintiff asserts that the ALJ made fatal factual errors (plural), but points to only one supposed error. Specifically, plaintiff claims that the decision fails to state that the ALJ

stipulated that plaintiff's husband would testify that he was one of her treating physicians and his opinion of her disabling subsedentary residual physical function capacity was the same as that of Dr. Iskander. (Pl.'s Mem. at 10.) But, as the decision reflects, at the hearing it was noted for the record that plaintiff's husband would testify that he was her treating physician and he agrees with Dr. Iskander's RFC assessment. (R. at 19, 268.) Thus, the ALJ did not fail to note Dr. Michael's opinion for the record.

## C. Plaintiff's Credibility

Plaintiff claims that the ALJ failed to consider her credibility. Plaintiff contends that the ALJ failed to credit her testimony regarding her symptoms and pain. Specifically, plaintiff argues that the ALJ did not discuss nor clearly rule on her credibility. (Pl.'s Mem. at 11-12.) I cannot disturb the ALJ's credibility determination unless it is patently wrong. *See Zurawski*, 245 F.3d at 887. "Under Social Security Ruling 96-7p, the ALJ's determination or decision regarding claimant credibility 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Id.* It is not sufficient for the ALJ to make a conclusory statement that

14

the claimant's allegations were considered or that the allegations were not credible. *Id.*

Here, the decision summarizes the plaintiff's testimony as follows: complaining of debilitating back pain; having at least 15 bad days per month in terms of pain, meaning a 9 out of 10 in terms of severity; spending a lot of time lying down; rating her pain as a 4 or 5 out of 10 in terms of severity on average days; coughing and having shortness of breath due to her heart condition; being able to walk one block and stand one-half hour; admitting to no problems sitting except that she cannot extend her arms or use them while seated, yet she can lift 10 pounds; acknowledging some difficulty climbing stairs, bending, stooping, crouching, kneeling, and balancing; falling a few times; sleeping well at night but taking several naps during the day; tending to her personal care, but needing to sit more often; making simple meals such as sandwiches; doing laundry in stages; dusting and vacuuming very little; going grocery shopping alone once per week and pushing the cart, but getting help to carry heavy bags; driving about twice per week; attending weekly church services; feeding the dog; watching television; using the computer every few days for about 10 minutes at a time; and describing her day as sitting around and lying down a lot. (R. at 17.) The decision states that plaintiff and her attorney were not persuasive, and that the extent of plaintiff's alleged symptoms and limitations do not find support in objective

15

medical findings or in her demeanor at the hearing. (R. at 17.) But the decision does not explain how plaintiff's testimony was inconsistent with the medical evidence or what about her demeanor contradicted her alleged symptoms and limitations.

After listing plaintiff's complaints, the decision summarizes the findings in the medical records of Dr. Robert P. Kazan, the echo/Doppler studies from October 29, 2003 and June 26, 2004, and the June 2004 chest x-ray. But the decision does not indicate how, if at all, this evidence is inconsistent with plaintiff's testimony. (R. at 18.) The decision recites the contents of Dr. Kazan's records as follows: MRI of the cervical spine shows a protruding disc on the right side; MRIs of plaintiff's thoracic spine showed an epidural defect, thought to be an extruded disc, that decreased in size since the last scan; MRI of the lumbar spine showed spinal stenosis; and neurosurgeon did not find enough in any of those areas to recommend spinal surgery. (R. at 17-18.) The decision also states that, on October 29, 2003, plaintiff had an echo/Doppler study showing: normal flow pattern across the prosthetic mitral valve with no evidence of mitral stenosis or regurgitation; mild aortic regurgitation was noted; moderate tricuspid regurgitation and mild pulmonary valve insufficiency were seen; the tricuspid velocities were suggestive of normal pulmonary artery systolic pressure. (R. at 18.) The decision states that the Doppler study was repeated on June 26, 2004 and compared to the

16

earlier study, showing aortic insufficiency severity appeared to have increased and a minimal amount of mitral regurgitation was now detected. (R. at 18.) The decision further states that a chest x-ray from June 2004 revealed a negative study for acute cardiopulmonary disease although there were degenerative changes in the thoracic spine. (R. at 18.) The decision also summarizes the findings in Dr. Iskander's reports and records as well as in the medical source statement, but accords these opinions no weight. (R. at 18-19.)

The decision includes the information contained in plaintiff's testimony and certain medical evidence, but fails to explain how it shows that plaintiff is not credible. I am not suggesting that the ALJ's credibility determination was incorrect, but rather that greater elaboration is necessary. I cannot discern from the opinion whether the credibility determination is correct because it does not explain why plaintiff was not persuasive, how plaintiff's alleged disability was unsupported by the medical evidence, or what about plaintiff's demeanor at the hearing contradicted either her testimony or the medical evidence.

### D. Consideration of Entire Record

Plaintiff argues that the ALJ failed to consider the entire record, particularly the evidence favorable to her. Specifically,

17

plaintiff alleges that the ALJ improperly failed to discuss in the decision the portion of the VE's testimony that was favorable to plaintiff, namely that "a hypothetical person with the physical RFC set forth [in exhibit 11F] would be incapable of employment in the national economy." (Pl.'s Mem. at 12-13.) The ALJ's failure to acknowledge the hypothetical based on the criteria consistent with exhibit 11F is consistent with the ALJ's rejection of Dr. Iskander's opinion as set forth therein, and therefore is not erroneous for this reason alone. The ALJ's decision to disregard exhibit 11F, however, was improper as explained in Section III.A above.

Plaintiff also contends that the ALJ mismanaged her time by scheduling only one-half hour for the hearing, which shows that the ALJ never intended to consider the entire record. Although it appears from the length of the transcript that the hearing was brief, I find no support in the record for this argument. First, I do not see how the amount of time spent at the hearing correlates to the ALJ's overall consideration of the entire record. Additionally, plaintiff's attorney made no objection to the duration of the hearing at the time. Indeed, and at the conclusion of the hearing, plaintiff's attorney indicated that he had nothing further to add except for a few closing comments, which did not include any mention that the time allotted for the hearing was insufficient. (R. at 273.)

IV.

For the foregoing reasons, plaintiff's and defendant's motions for summary judgment are denied.  This case is remanded for further proceedings consistent with this opinion in order for the ALJ to consider exhibits 11F and 1F along with the other evidence in the record and to elaborate on the determination regarding plaintiff's credibility.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: January 18, 2008